UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHAEL DWAIN JOHNSTON, Individually and for Others Similarly Situated, <br><br> v. <br><br> BIRCH RESOURCES, LLC | Case No. 4:21-cv-03101 <br><br> Jury Trial Demanded <br><br> FLSA Collective Action |

## ORIGINAL COMPLAINT

### SUMMARY

1. Plaintiff Michael Dwain Johnston (Johnston) brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (FLSA) against Defendant Birch Resources, LLC (Birch Resources).

2. Johnston and the other workers like him regularly worked for Birch Resources in excess of 40 hours each week.

3. But these workers never received overtime for the overtime hours they worked.

4. Instead of paying overtime as required by the FLSA, Johnston and the other Birch Resources' Health, Safety, and Environmental (HSE) were paid a daily rate with no overtime pay. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

7. Birch Resources is headquartered in Houston, Texas, in this District and Division.

## THE PARTIES

8. Johnston performed work for Birch as an HSE Advisor from October 30, 2018 until September 7, 2021. During his employment with Birch he was paid a day-rate with no overtime compensation. His consent to be a party plaintiff is attached as **Exhibit A**.

9. Johnston brings this action on behalf of himself and all other similarly situated workers paid by Birch Resources' day-rate system. Each of these HSE Advisors were paid a flat amount for each day worked on behalf of Birch with no overtime for hours they worked in excess of 40 hours in a workweek in accordance with the FLSA. The class of similarly situated workers consists of:

> **All HSE Advisors employed by or performing work on behalf of Birch Resources who were paid a day-rate during the past three years** (the "Day Rate Workers").

10. Birch Resources is a Delaware company with its principal place of business in Texas. It may be served with process by serving its registered agent: CT Corporation System, 1999 Bryan St, Suite 900, Dallas, Texas 75201.

## COVERAGE UNDER THE FLSA

11. For at least the past three years, Birch Resources has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12. For at least the past three years, Birch Resources has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

13. For at least the past three years, Birch Resources has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person

and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000.

14. For at least the past three years, Johnston and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

15. Birch Resources uniformly compensated Johnston and the Day Rate Workers with a day rate for all of the hours that they worked.

16. Birch Resources' treatment of Johnston as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action. Birch Resources is the only party that Johnston claims was his employer and the only party responsible for ensuring compliance with the FLSA.

## FACTS

17. Birch Resources is a privately held energy and power company with assets in the Permian Basin.

18. To complete its business objectives, Birch Resources hires personnel to perform integral and necessary work such as maintaining the safety of Birch's job sites.

19. Over the past three years, Birch Resources employed dozens of individuals – including Johnston – as HSE Advisors.

20. These HSE Advisors are subjected to the same or similar illegal pay practices for the same work. Specifically, the Day Rate Workers were paid a day-rate while performing safety work on behalf of Birch Resources, regardless of the number of hours that they worked that day (or in that workweek) without overtime pay.

21. For example, Johnston worked for Birch Resources starting in October of 2018 until September 2021 as an HSE Advisor in Big Springs, Texas.

22. Throughout his tenure, he was paid on a day-rate basis.

23. As a HSE Advisor, Johnston's primary job duties included ensuring safety practices and procedures and OSHA regulations were met on the Birch Resources' site.

24. Johnston worked in excess of 40 hours each week while employed by Birch Resources.

25. Johnston regularly worked 80 + hours a week.

26. Johnston would usually work a two-week hitch.

27. For example, from January 7, 2020 until January 21, 2020, Johnston worked 14 days straight.

28. During that two-week period Johnston worked at least 44 hours of overtime in each week.

29. The work Johnston performed was an integral and necessary part of Birch Resources' core business.

30. During Johnston's employment with Birch Resources, he was classified as an independent contractor, however, Birch Resources exercised control over all aspects of his job.

31. Birch Resources did not require any substantial investment by Johnston for him to perform the safety work required of him.

32. Birch Resources paid Johnston based on the invoices he submitted through a third-party payroll company.

33. Birch Resources determined Johnston's opportunity for profit and loss.

34. Birch Resources controlled all the significant or meaningful aspects of the job duties performed by Johnston.

35. Birch Resources managed the hours and locations Johnston worked, the safety rules he adhered to and enforced and the rates of pay he received.

36. Birch Resources controlled all aspects of Johnston's job activities by enforcing mandatory compliance with Birch Resources' policies and procedures in a manner similar to that of an employer and employee.

37. No real investment was required of Johnston to perform his job.

38. Johnston worked on Birch Resources' job location, Birch Resources controlled the job site through leases and operating agreements, and Birch Resources controlled the exploration and production operations at the job site.

39. Johnston did not provide the equipment he worked with on a daily basis.

40. Birch Resources made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Johnston worked.

41. Johnston did not incur operating expenses like rent, payroll, and marketing.

42. Johnston was economically dependent on Birch Resources during his employment.

43. Birch Resources set Johnston's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Birch Resources.

44. Birch Resources directly determined Johnston's opportunity for profit and loss. Johnston's earning opportunity was based on the number of days Birch Resources scheduled him to work.

45. The daily and weekly activities of Johnston and the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by Birch Resources.

46. Virtually every job function was pre-determined by Birch Resources, including the forms to use at a job site, the reports to compile, the schedule of work, and safety guidelines to follow.

47. Johnston and the Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters.

48. Johnston and the Day Rate Workers did not have any supervisory or management duties.

49. Johnston reported directly to the Birch Resources' HSE Manager.

50. Johnston was released from his employment with Birch Resources by its HSE Manager.

51. For the purposes of an FLSA overtime claim, Johnston and the Day Rate Workers performed substantially similar safety job duties related to servicing oil and gas operations on Birch Resources' sites.

52. Johnston and the Day Rate Workers were not employed by Birch Resources on a project-by-project basis.

53. In fact, while Johnston was classified as an independent contractor, he was regularly on call for Birch Resources and was expected to drop everything and work whenever needed.

54. The Day Rate Workers also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Day Rate Workers all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for 2 or more weeks at a time.

55. Instead of paying them overtime, Birch Resources paid Johnston and the Day Rate Workers a day-rate. Birch Resources denied the Day Rate Workers overtime for any hours worked in excess of 40 hours in a single workweek.

56. Birch Resources' policy of failing to pay its HSE Advisors misclassified as independent contractors, including Johnston, overtime violates the FLSA because these workers are, for all purposes, employees.

57. Johnston and the Day Rate Workers were not guaranteed a salary under the FLSA. *See Hewitt v. Helix Energy Sols. Grp., Inc.,* No. 19-20023, 2021 WL 4099598, at *3 (5th Cir. Sept. 9, 2021).

58. Since Johnston and the Day Rate Workers were not guaranteed a salary, they were non-exempt employees who are owed unpaid overtime.

59. Because Johnston (and Birch Resources' other HSE Advisors) was misclassified as an independent contractor by Birch Resources, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

60. Despite knowing the FLSA's requirements, Birch Resources failed to pay Johnston and the Day Rate Workers overtime for hours worked in excess of 40 hours in a single workweek.

### FLSA VIOLATIONS

61. Johnston incorporates the preceding paragraphs by reference.

62. As set forth herein, Birch Resources violated the FLSA by failing to pay Johnston and the Day Rate Workers overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

63. Birch Resources knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Workers overtime compensation. Birch Resources' failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

64. Accordingly, Johnston and the Day Rate Workers are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### COLLECTIVE ACTION ALLEGATIONS

65. Johnston incorporates all previous paragraphs and alleges that the illegal pay practices Birch Resources imposed on Johnston were likewise imposed on the Day Rate Workers.

66. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

67. Numerous other individuals who worked with Johnston were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

68. Based on his experiences and tenure with Birch Resources, Johnston is aware that Birch Resources' illegal practices were imposed on the Day Rate Workers.

69. The Day Rate Workers were all improperly classified as contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

70. Birch Resources is the true employer of Johnston and the Day Rate Workers.

71. Birch Resources' failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

72. Johnston's experiences are therefore typical of the experiences of the Day Rate Workers.

73. The specific job titles or precise job locations of the Day Rate Workers do not prevent collective treatment.

74. Johnston has no interests contrary to, or in conflict with, the Day Rate Workers. Like each Day Rate Worker, Johnston has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

75. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

76. Absent this action, many Day Rate Workers likely will not obtain redress of their injuries and Birch Resources will reap the unjust benefits of violating the FLSA.

77. Furthermore, even if some of the Day Rate Workers could afford individual litigation against Birch Resources, it would be unduly burdensome to the judicial system.

78. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate Workers and provide for judicial consistency.

79. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   (a) Whether Birch Resources employed the Day Rate Workers within the meaning of the FLSA;

   (b) Whether the Day Rate Workers were improperly misclassified as independent contractors;

   (c) Whether Birch Resources' decision to classify Johnston and the Day Rate Workers as independent contractors was made in good faith;

   (d) Whether Birch Resources' decision to not pay time and a half for overtime to Johnston and the Day Rate Workers was made in good faith;

   (e) Whether Birch Resources' violations of the FLSA was willful; and

   (f) Whether Birch Resources' illegal pay practices were applied uniformly to all Day Rate Workers.

80. Johnston's claims are typical of the claims of the Day Rate Workers. Johnston and the Day Rate Workers sustained damages arising out of Birch Resources' illegal and uniform employment policy.

81. Johnston knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a collective action.

82. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

**JURY DEMAND**

83. Johnston demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Johnston pray for judgment against Birch Resources as follows:

(a) For an order allowing this action to proceed as a FLSA collective action and directing notice to the class;

(b) For an order pursuant to section 16(b) of the FLSA finding Birch Resources liable for unpaid back wages, and an equal amount of liquidated damages, due to Johnston and the Day Rate Workers;

(c) For an order awarding Johnston and the Day Rate Workers the costs of this action;

(d) For an order awarding Johnston and the Day Rate Workers their attorneys' fees;

(e) For an order awarding Johnston and the Day Rate Workers unpaid benefits and compensation in connection with the FLSA violations;

(f) For an order awarding Johnston and the Day Rate Workers pre- and post-judgment interest at the highest rates allowed by law; and

(g) For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
Richard M. Schreiber
Texas Bar No. 24056278
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77005
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

>Richard J. (Rex) Burch
>Texas Bar No. 24001807
>Federal ID No. 21615
>**BRUCKNER BURCH PLLC**
>11 Greenway Plaza, Suite 3025
>Houston, Texas 77046
>713-877-8788 – Telephone
>713-877-8065 – Facsimile
>rburch@brucknerburch.com
>
>**ATTORNEYS IN CHARGE FOR PLAINTIFF**